[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The sole issue in this municipal tax appeal is the value of the subject property located at 905 Burnside Avenue in East Hartford, Connecticut.
905 Burnside Avenue is a 72 unit apartment complex located on 5.63 acres of land. The property is a three-story masonry building containing 68,284 square feet of gross building area. The apartment building was constructed in 1969. There are nine two-bedroom units and sixty-three one-bedroom units in the building. The present owners of the property are Robert H. Anderson and Norma R. Anderson, Trustees under the Anderson Family Trust Agreement dated November 1, 1987. The present owners acquired the property from October Apts. Limited Partnership on December 3, 1990, for no consideration.
The town of East Hartford conducted its last town-wide revaluation of real estate on October 1, 1993. At that time, the town valued the subject property at $1,892,530. The previous valuation by the town on the list of October 1, 1992 was $1,229,600 based upon the previous town-wide revaluation in 1981. CT Page 9705
The plaintiff's appraiser, Robert G. Stewart, placed a value on the subject property, as of October 1, 1993, of $1,100,000. Stewart considered the highest and best use of the property to be its continued use as a 72 unit apartment complex. Essentially, Stewart relied on the sales approach to find value. The defendant's appraiser, Wallace L. Inkpen, was of the opinion that the subject property, as of October 1, 1993, was valued at $1,650,000. Inkpen also found that the highest and best use of the property was its continued use as an apartment complex. We concur with both appraisers that the highest and best use of the subject property is as a 72 unit apartment complex. Inkpen gave primary consideration to the income approach since the subject property was income producing or investment type of real estate.
We find that there is merit in both approaches, sales and income. When there are good comparable sales available which provide sufficient data market activity of similar properties, the sales approach is a useful tool in determining valuation. The Appraisal of Real Estate (10th ed.) p. 403. On the other hand, the income or income capitalization approach is typically use in market value appraisals of income-producing property. Id., p. 413.
Both Inkpen and Stewart considered the same comparables in analyzing the subject property using the sales approach. Although Stewart relied on these comparable sales to find value, Inkpen did not. Inkpen considered these same sales but rejected them as not truly comparable since most of the sales were bank owned or distressed properties. We disagree with Stewart that the comparable sales selected by both appraisers should be disregarded. We agree with Stewart that the fact that three of the comparables were bank recovered properties and sold by the Federal Deposit Insurance Corporation (FDIC) through a nationwide auction did not result in a lower market. Investment type properties sold through a nationwide auction system with willing buyers and willing sellers establishes the fair market value of properties. (See plaintiff's exhibit A, p. 17.)
Inkpen analyzed the six comparables and arrived at a per unit value of $22,000 for the subject property. Inkpen placed a higher valuation on the subject because it was privately owned rather than property which had participated in the market of bank-owned sales. This position is inconsistent with our determination that properties sold through the FDIC auction system were CT Page 9706 representative of the market at that time. Stewart, on the other hand, used the same five comparables selected by Inkpen and adjusted these sales for differing financing and characteristics. Stewart arrived at a per unit value for the subject at $14,500. Of the five comparables used by Stewart and Inkpen, the 80 Simmons Road sale of 84 units for $1,500,000 on March 31, 1993 is the most similar to of the subject property.
Our analysis of the comparable sales and adjustments leads us to conclude that the per unit market value of the subject property on October 1, 1993, was $20,000. This places the value of the subject property, with 72 units, at $1,440,000 using the comparable sales approach.
In analyzing the income approach used by both Stewart and Inkpen we note that both appraisers arrived at substantially the same net operating income. Stewart had net income of $208,633 and Inkpen had net income of $220,693. Inkpen concluded that the market effective gross income was $400,963 after deducting a vacancy and collection loss of 12%. Stewart concluded that the market potential gross income was $448,200 but shifted the vacancy and collection loss of 20% from the income side to the expense side of the projected income and expense statement. The significant difference in value between Stewart and Inkpen, using the income approach, lies in the selection of the capitalization rate. Whereas Stewart arrived at a discount rate using the band of investment technique of 14.915%, Inkpen arrived at a rate of 10.89%.
After reviewing the basis used by each appraiser to arrive at their capitalization rate, we conclude that the rate should be somewhere between the two. We conclude that the capitalization rate should be 12%. To this we add the tax factor of 2% to arrive at an overall cap rate of 14%. Using a net operating income of $210,000, divided by the cap rate of 14%, we arrive at a fair market value of the subject property as of October 1, 1993, of $1,500,000. We conclude that of the two approaches to value, sales and income, the income approach is more reflective of value for this investment type property. We therefore take the higher of the two values and make a final determination of value at $1,500,000.
Accordingly, the plaintiff's appeal is sustained. Judgment may enter setting the fair market value of the subject property, as of October 1, 1993, at $1,500,000, without costs to either party. CT Page 9707
Arnold W. Aronson Judge Trial Referee